IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAMEN L. TOY, #N94265,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 25-cv-01579-SMY |
| | ) |
| **J.B. PRITZKER, LATOYA HUGHES,** | ) |
| **ANTHONY WILLS,** | ) |
| **JOHN/JANE DOE MEDICAL DIRECTOR,** | ) |
| **MS. NICHOLSON, JANE DOE/MS. S.,** | ) |
| **JANE DOE/MS. R., JOHN DOE/MR. B.,** | ) |
| **JOHN/JANE DOE (Internal Affairs Div.),** | ) |
| **SGT. WOOLEY, SGT. KING,** | ) |
| **SGT. JONES, C/O POWELL,** | ) |
| **JOHN DOES 1-4 (C/O of MSU),** | ) |
| **C/O KORANDO, and** | ) |
| **JOLEEN KLUMP,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Damen L. Toy, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims certain Menard officers injured him with excessive force, other defendants failed to protect him, and others were deliberately indifferent to his need for protection and medical attention. Plaintiff also raises claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*. (Doc. 1). He seeks monetary damages and emergency injunctive relief (Id., Doc. 10).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious

1

claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff was involved in a verbal altercation on May 7, 2024 with a staff member in the dining hall of Menard's Medium Security Unit ("MSU") (Doc. 1, p. 9). After Plaintiff returned to his cell as ordered, Defendant Sgt. King told Plaintiff he would be sent to segregation via the MSU receiving area. Plaintiff asked King to have the tactical unit transport him because he feared violence based on threats from the MSU staff. King responded that if he called tactical, he would have them mace Plaintiff and drag him to receiving. King refused Plaintiff's request to contact Internal Affairs ("IA"), the mental health unit, or a crisis team, who were aware of the threats made by MSU staff against Plaintiff. King threatened to mace Plaintiff if he didn't cuff up. Plaintiff eventually complied and was handcuffed behind his back.

At MSU Receiving, Plaintiff was turned over to Defendant Sgt. Jones and John Does #1-3 (MSU staff), who proceeded to physically assault Plaintiff (Doc. 1, p. 10). Jones sprayed Plaintiff with mace while Plaintiff lay face up on the floor, still cuffed behind his back. Jones allowed John Doe #1 to place his foot on Plaintiff's chest and push, forcing him to exhale. Jones sprayed Plaintiff in the eyes, nose, and mouth when Plaintiff inhaled, and sprayed him again after a couple minutes (Doc. 1, pp. 11-12). John Doe #2 and John Doe #3 grabbed Plaintiff by the legs and dragged him across the floor, bouncing his head off the floor numerous times (Doc. 1, pp. 13-14). John Doe #2 and John Doe #3 ripped Plaintiff's shoes and pants off, twisting his feet and legs and injuring him. Defendant John Doe #4 (also MSU staff) observed these actions and failed to

intervene to stop John Does #2 and #3 from harming Plaintiff (Doc. 1, p. 15). Both Plaintiff's hands were broken, and he suffered fractured fingers as well as injuries to his head, neck, shoulders, arms, hips, knees, legs, and feet from the attack. (Doc. 1, pp. 6, 10).

Before the May 7, 2024 physical assault, Plaintiff had written many letters to Defendants Warden Wills, IDOC Director Hughes, IA Sgt. Wooley, and the John/Jane Doe IA Division Officers, reporting MSU staff's threats of physical violence against him and seeking protection (Doc. 1, pp. 6-8, 16-18). Plaintiff's family members also contacted Wills and IA regarding Plaintiff's safety concerns. Defendants Wills, Hughes, Wooley, and the John/Jane Doe IA Officers did not respond to these requests and took no action to protect Plaintiff.

Plaintiff spoke personally to Defendant C/O Powell before the attack, informing Powell he would not be safe under the control of MSU Receiving staff because of their previous threats to physically harm him. Plaintiff asked Powell to contact IA and mental health to ensure Plaintiff would be safely transported to North 2 Segregation. Powell denied that request, stating, "whatever happens, happens." (Doc. 1, pp. 18-19).

After the May 7, 2024 attack, Plaintiff handed sick call request slips to numerous med-techs, nurses, and medical staff, detailing his injuries. None of these requests yielded an answer, so in late May 2024, Plaintiff wrote to Defendant John/Jane Doe Medical Director seeking medical attention (Doc. 1, p. 20). Plaintiff got no response. He continued to write to the Medical Director seeking care over the next 13 months (Doc. 1, p. 21)

Plaintiff was housed in the North 2 Segregation Unit, 5 Gallery, from May 7, 2024 until November 7, 2024 (Doc. 1, p. 22). A mental health provider came to his cell weekly to assess his mental health. Jane Doe "Ms. S." and John Doe "Mr. B.," were mental health providers during this time (Doc. 1, pp. 22-26). Plaintiff showed Ms. S. and Mr. B. his obviously injured hands and

fingers and asked them to contact the medical unit because he had not yet been seen by a medical provider despite giving sick-call slips to medical staff daily. Ms. S. and Mr. B. refused to relay Plaintiff's requests. Mental health provider Ms. Nicholson likewise refused Plaintiff's request to contact medical staff after viewing his injured hands (Doc. 1, pp. 26-28).

On January 15, 2025, Plaintiff requested a mental health crisis team member and was seen by Jane Doe "Ms. R." (Doc. 1, pp. 28-30). He told Ms. R. about the May 7, 2024 attack and his injuries, showed her his damaged hands, and asked her to contact medical so he could be seen. He also complained that the denial of medical treatment was causing his mental health to suffer. Ms. R. refused and threatened Plaintiff with disciplinary action for wasting her time. Plaintiff was finally seen in the Health Care Unit for the first time 13 months after he was injured on May 7, 2024, and was diagnosed with fractured hands and fingers (Doc. 1, p. 21).

Plaintiff was charged with a disciplinary infraction over the May 7, 2024 incident (Doc. 1, pp. 31-33). On the date of the hearing, Defendant Korando summoned Plaintiff, who requested a jumpsuit. Korando said he would return with one. Soon after, Korando told Plaintiff his hearing would be rescheduled due to an emergency. Several days later, Lt. Walker told Plaintiff his hearing would not be rescheduled because Korando submitted a refusal form stating Plaintiff refused to attend (Doc. 1, p. 32). Plaintiff explained he had not refused. He was found guilty and given six months in segregation plus other sanctions.

Joleen Klump violated Plaintiff's Eighth Amendment, ADA, and RA rights by failing to replace his hearing aids for ten months (Doc. 1, pp. 33-35). Plaintiff wrote to Klump in early December 2023 seeking replacements. Klump responded that Plaintiff was "awaiting an approved appointment." (Doc. 1, p. 34). Over the next seven to eight months, she ignored Plaintiff's repeated requests, which informed her of his safety concerns. Plaintiff missed signals to exit his

4

cell for legal and family calls and could not hear officers speaking to him. He finally got replacement hearing aids on October 3, 2024.

Plaintiff, who is African-American, asserts that all non-African-American Defendants subjected him to race-based discrimination when they failed to protect him or provide him with medical treatment, yet gave such assistance to white inmates (Doc. 1, pp. 35-36).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment excessive force claim against Jones and John Doe Correctional Officers #1-4 of MSU, for the attack on Plaintiff on May 7, 2024. |
| Count 2: | Eighth Amendment claim against King, Hughes, Wills, Wooley, and Powell for failing to protect Plaintiff from the May 7, 2024 attack after Plaintiff informed these defendants of the threats of physical harm he received from MSU correctional officers. |
| Count 3: | Eighth Amendment deliberate indifference to medical needs claim against the John/Jane Doe Medical Director for refusing to provide medical care to Plaintiff after the May 7, 2024 attack; against Jane Doe/Ms. S., John Doe/Mr. B., Jane Doe/Ms. R., and Nicholson, for refusing to notify the health care unit that Plaintiff needed medical assistance; and against Jones and John Doe Correctional Officers #1-3 of MSU, for inflicting injuries on Plaintiff and failing to obtain medical care for him. |
| Count 4: | Fourteenth Amendment procedural due process claim against Korando for falsely reporting that Plaintiff refused to attend his disciplinary hearing, so Plaintiff was found guilty and punished without the opportunity to present a defense. |
| Count 5: | Eighth Amendment and ADA and/or RA claims against Klump for failing to replace his inoperable hearing aids from December 2023 through October 3, 2024. |
| Count 6: | Fourteenth Amendment equal protection claim against all non-African-American defendants for treating Plaintiff differently from white inmates with respect to the above claims. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be

considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### Preliminary Dismissals

Plaintiff seeks to hold Defendant Governor J.B. Pritzker liable because he failed to supervise the other defendants or to ensure humane living conditions at Menard (Doc. 1, p. 5). There is no supervisory liability in a civil rights case brought under § 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Instead, a defendant must be personally responsible for a constitutional violation. The Complaint contains no allegations indicating Governor Pritzker was aware of or had any direct involvement in the incidents that gave rise to Plaintiff's claims. Therefore, Governor Pritzker will be dismissed from the case without prejudice.

It is proper for a plaintiff to use the "John/Jane Doe" designation to refer to specific individuals whose names are unknown. However, the mere assertion that a group of prison staff violated a plaintiff's rights runs afoul of the pleading standards in *Iqbal* and *Twombly*. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts and thus failed to adequately plead personal involvement). Plaintiff must make plausible allegations against individuals. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Here, Plaintiff attempts to assert a claim against an unknown group of defendants in the Internal Affairs Division, without identifying particular acts or omissions by any specific individuals that allegedly violated his rights.

Accordingly, the John/Jane Doe Internal Affairs Division defendants will be dismissed without prejudice.

## Severance of Claims

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); 3A *Moore's Federal Practice* § 20.06, at 2036-45 (2d ed. 1978).

Here, Plaintiff's claims in Counts 1-3 relate to the May 7, 2024 incident of alleged excessive force, failure to protect, and deliberate indifference to Plaintiff's injuries from that incident. Count 4 is directed against Korando for allegedly depriving Plaintiff of due process related to a disciplinary hearing, and Count 5 is directed against Klump for her alleged failure to provide Plaintiff with functional hearing aids between December 2023 and October 2024.

The claims in Counts 4 and 5 arose from transactions and occurrences that are distinct from the claims in Counts 1-3. Counts 1-3 do not share any common question of law or fact with Count 4 or Count 5, and Counts 4 and 5 involve different defendants from those in Counts 1-3. As such, the Court will sever the improperly joined claims in Count 4 and Count 5 into two separate lawsuits. *See* FED. R. CIV. P. 18, 20, and 21. *See also Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (district courts should not allow inmates to combine multiple lawsuits into a single complaint). Count 6 will remain in the present case.

Plaintiff will have the opportunity to voluntarily dismiss the severed cases consisting of

the claims in Counts 4 and 5 if he does not wish to pursue them.

## Discussion

### Count 1

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). Here, Plaintiff alleges Jones maliciously sprayed him with mace while he was incapacitated and held down by John Doe #1 and posed no threat; John Does #2 and #3 dragged him, banged his head against the floor, broke his hands and fingers, and inflicted other bodily injuries; John Doe #4 saw what happened and failed to intervene. These allegations state a viable excessive force claim against Jones and John Does #1-4. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).

### Count 2

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). To state a claim for failure to protect, a plaintiff must plead facts suggesting he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889.

Plaintiff states a viable Eighth Amendment claim against King, Hughes, Wills, Wooley, and Powell. He alleges he wrote or spoke to each of these defendants before the May 7, 2024 assault on him and told them about the threats of physical violence against him by MSU staff and sought protection. However, these defendants allegedly failed to take any steps to protect Plaintiff

8

from the attack that ensued.  Count 2 will proceed for further review.

## Count 3

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs.  *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017).  To state such a claim, a prisoner must plead facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs.  *Id.*  An objectively serious condition includes a condition that significantly affects an individual's daily activities or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  A guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]"  *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996).

Plaintiff's allegations are sufficient to state a claim for deliberate indifference in Count 3 against the John/Jane Doe Medical Director.  Additionally, mental health providers Jane Doe/Ms. S., John Doe/Mr. B., Jane Doe/Ms. R., and Nicholson were allegedly aware of Plaintiff's obvious physical injuries yet refused his requests to assist him in obtaining medical care.  Plaintiff's allegations also support a deliberate indifference claim against Jones and the John Doe Correctional Officers #1-3 who allegedly injured Plaintiff and did not seek medical care for him. Count 3 will proceed against these individuals as well.

## Count 6

Racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth Amendment unless it is narrowly tailored to serve a compelling state interest.  *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).  To state an equal protection claim, a plaintiff must sufficiently plead that a state actor has purposely treated him differently than persons of a different

race. *Id.* Here, Plaintiff makes broad allegation that "all the named Defendants who are non-African-American (white)" discriminated against him based on his race because whites who request medical and mental health attention and assistance from IA get those services "promptly or more promptly" than he did (Doc. 1, p. 36). He does not specify the race of any of the defendants, nor does he include factual allegations to support this claim. Count 6 will therefore be dismissed for failure to state a claim upon which relief may be granted.

## Unknown/John/Jane Doe Defendants

Plaintiff is responsible for securing information aimed at identifying the Unknown/John/Jane Doe Defendants, in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the names of the unknown defendants are obtained, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint. Menard Warden Anthony Wills will remain as a defendant in his official capacity for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Defendants.

## Injunctive Relief

Because Plaintiff seeks injunctive relief related to his injuries from the excessive force incident (Doc. 10), Menard Warden Anthony Wills will remain as a defendant in his official capacity[1] regarding this request. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

Plaintiff requests an emergency TRO or Preliminary Injunction, ordering defendants to house him in a single-man cell because, due to his injured hands/fingers and prescribed medical

---

[1] Defendant Wills is also a defendant in his individual capacity for Count 2.

braces, he is unable to defend himself from the danger of attack by a cellmate (Doc. 10). Plaintiff fears defendants may retaliate against him for this lawsuit by engineering such an attack. A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1). Because Plaintiff has not demonstrated the likelihood of immediate and irreparable harm before Defendants can be heard, his request for a TRO in Doc. 10 is **DENIED**.

A preliminary injunction may issue only after the adverse party is given notice and an opportunity to respond. *See* FED. R. CIV. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he has some likelihood of succeeding on the merits, that no adequate remedy at law exists, and that he will suffer irreparable harm if injunctive relief is not granted. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). If these elements are established, the Court must then balance the potential harm to the movant if the preliminary injunction were denied against the potential harm to the non-movant if the injunction were granted, and must consider whether granting the preliminary injunction is in the public interest. *Mays*, 974 F.3d at 810; *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

Defendants must be given an opportunity to file a response before the Court can resolve Plaintiff's motion. Accordingly, Warden Wills, in his official capacity, may respond to the motion for injunctive relief (Doc. 10) **within 14 days** of returning an executed waiver of service of process.

The Court will then review the response and determine whether a hearing on the motion is necessary.

### Disposition

Count 4 against C/O Korando and Count 5 against Jolene Klump are **SEVERED** into two new cases. In each new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1);
- Plaintiff's motion to proceed IFP (Doc. 5) and Prisoner Trust Fund Account Statement (Doc. 11).

In each respective new case, Plaintiff shall have the option to proceed on the severed Count 4 and/or Count 5 or to dismiss the case without prejudice and before he is required to pay a fee. Counts 4 and 5, and Defendants Korando and Klump, are **DISMISSED** from *this* case with prejudice.

The Complaint states colorable claims in Count 1 against Jones and the John Doe Officers #1-4; in Count 2 against King, Hughes, Wills, Wooley, and Powell; and in Count 3 against the John/Jane Doe Medical Director, Jane Doe/Ms. S, John Doe/Mr. B., Jane Doe/Ms. R. and Nicholson.

Count 6, Defendant J.B. Pritzker, and the John/Jane Doe Internal Affairs Division Defendants are **DISMISSED** without prejudice.

The Clerk shall prepare for Latoya Hughes, Anthony Wills (in his individual and official capacities), Ms. Nicholson, Sgt. Wooley, Sgt. King, Sgt. Jones, and C/O Powell: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, a copy of the Motion for injunctive relief (Doc. 10), and this Memorandum and Order to each

Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of

prosecution.  *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  October 7, 2025**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.